1  REBECCA R. WEINREICH, SB# 155684
      E-Mail: weinreich@lbbslaw.com
2  HELLAR-ANN HANCOCK, SB# 117075
      E-Mail: hhancock@lbbslaw.com
3  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
   221 North Figueroa Street, Suite 1200
4  Los Angeles, California 90012
   Telephone: (213) 250-1800
5  Facsimile: (213) 481-0621

6  Attorneys for Defendants AIG RISK MANAGEMENT, INC., NATIONAL
   UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and
7  AMERICAN INTERNATIONAL GROUP, INC.

8

9                    UNITED STATES DISTRICT COURT

10      NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

11

12 TAMMI JONES,                          ) CASE NO.  CV 10-01374 EMC
                                         )
13          Plaintiff,                    ) [The Honorable Edward M. Chen]
                                         )
14     v.                                 ) **DEFENDANT AMERICAN
                                         ) INTERNATIONAL GROUP, INC.'s
15 AIG RISK MANAGEMENT, INC.;            ) NOTICE OF MOTION AND MOTION TO
   AIG CONSTRUCTION RISK                  ) DISMISS PURSUANT TO FEDERAL
16 MANAGEMENT GROUP; AMERICAN            ) RULES OF CIVIL PROCEDURE, RULE
   INTERNATIONAL COMPANIES;              ) 12(b)(6); MEMORANDUM OF POINTS AND
17 AMERICAN INTERNATIONAL GROUP OF       ) AUTHORITIES IN SUPPORT THEREOF**
   COMPANIES; AMERICAN                    )
18 INTERNATIONAL GROUP, INC.;            ) **[Filed concurrently with Motion to Strike and
   NATIONAL UNION FIRE INSURANCE         ) Request for Judicial Notice]**
19 COMPANY OF PITTSBURGH, PA; and        )
   DOES ONE through TWENTY,              ) Date:    June 16, 2010
20                                        ) Time:    10:30 a.m.
            Defendants.                    ) Place:   Courtroom C
21                                        )
                                         )
22 ─────────────────────────────────────  )

23 TO PLAINTIFF AND TO HER ATTORNEYS OF RECORD:

24         PLEASE TAKE NOTICE that on June 16, 2010 at 10:30 a.m., or as soon thereafter as this

25 motion may be heard, in Courtroom C of the United States District Court House, before the

26 Honorable Edward M. Chen, located at 450 Golden Gate Avenue, San Francisco, California,

27 Defendant American International Group, Inc. ("Defendant"), through its counsel, will and hereby

28 does move to dismiss Plaintiff, Tammi Jones' ("Plaintiff"), first through sixth causes of action in the

4821-2457-0118.1                          -1-

**LEWIS
BRISBOIS
BISGAARD
& SMITH LLP**

1  Complaint. This motion is made under *Federal Rules of Civil Procedure* Rule 12(b)(6) and Rule
2  9(b).

3      Defendant moves to dismiss these claims on the grounds that each of these causes of action
4  fails to state a claim upon which relief can be granted. Specifically, Defendant's motion seeks
5  dismissal of Plaintiff's causes of action for (1) breach of contract, (2) breach of the implied
6  covenant of good faith and fair dealing, (3) fraud and deceit, (4) interference with contractual
7  relations, (5) intentional infliction of emotional distress, and (6) conspiracy, on the grounds that
8  Plaintiff has failed to state a claim upon which relief can be granted.

9      This motion is based on this Notice of Motion and Motion, the accompanying Memorandum
10  of Points and Authorities, the pleadings on file, oral argument of counsel, and such other materials
11  and arguments as may be presented in connection with the hearing on the motion.

12

13  DATED: April 30, 2010          LEWIS BRISBOIS BISGAARD & SMITH LLP

14

15                      By /s/ Rebecca R. Weinreich
16                        Rebecca R. Weinreich
                         Hellar-Ann Hancock
17                        Attorneys for Defendants AIG RISK MANAGEMENT,
                         INC., NATIONAL UNION FIRE INSURANCE
18                        COMPANY OF PITTSBURGH, PA and AMERICAN
                         INTERNATIONAL GROUP, INC.

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

4821-2457-0118.1                    -2-

# TABLE OF CONTENTS

Page

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     A.     Procedural Status . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     B.     Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     C.     Allegations Regarding The Insurance Contract . . . . . . . . . . . . . . . . . . . . . . . . . 2

     D.     Allegations Regarding Defendants' Identity and Capacity . . . . . . . . . . . . . . . . . 3

II.     LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     A.     Rule 12(b)(6) Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.     PLAINTIFF FAILS TO ALLEGE FACTS SUFFICIENT TO SUPPORT HER CLAIM FOR BREACH OF CONTRACT AGAINST AIG, INC. . . . . . . . . . . . . . . . 4

IV.     PLAINTIFF HAS NOT STATED A BREACH OF CONTRACT CAUSE OF ACTION AGAINST AIG, INC. BECAUSE SHE HAS NOT ALLEGED IT IS A PARTY TO THE INSURANCE CONTRACT . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

V.     BREACH OF CONTRACT AND BAD FAITH CLAIMS CANNOT BE ASSERTED AGAINST AIG, INC. AS A HOLDING COMPANY . . . . . . . . . . . . . . 5

VI.     PLAINTIFF'S COMPLAINT AGAINST AIG, INC. SHOULD BE DISMISSED BECAUSE PLAINTIFF DID NOT AND CANNOT ALLEGE MANAGEMENT AND CONTROL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

VII.     PLAINTIFF'S CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING MUST FAIL . . . . . . . . . . . . . . . . . . . . . 7

VIII.     PLAINTIFF CANNOT STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IX.     PLAINTIFF FAILS TO STATE A CLAIM FOR FRAUD . . . . . . . . . . . . . . . . . . . 10

X.     PLAINTIFF FAILS TO STATE A CLAIM FOR CONSPIRACY . . . . . . . . . . . . . . . 11

XI.     PLAINTIFF'S CAUSE OF ACTION FOR INTENTIONAL INTERFERENCE WITH CONTRACT IS WITHOUT MERIT . . . . . . . . . . . . . . . . . . . . . . . . . . 13

XII.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

1

# TABLE OF AUTHORITIES

2
**Page**

3   **Federal Cases**

4   *Ashcroft v. Iqbal*
    (2009) U.S. LEXIS 3472 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
5
    *Bell Atlantic Corp. v. Twombly*
6   (2007) 127 S.Ct. 1955 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

7   *Cooper v. Pickett*
    (9th Cir. 1997) 137 F.3d 616 . . . . . . . . . . . . . . . . . . . . . . . . . . 10
8
    *Desaigoudar v. Meyercord*
9   (9th Cir. 2000) 223 F.3d 1020 . . . . . . . . . . . . . . . . . . . . . . . . . 11

10  *In re GlenFed Inc. Sec. Litigation*
    (9th Cir. 1994) 42 F.3d 1541 . . . . . . . . . . . . . . . . . . . . . . . . . . 11
11
    *National Association for Advancement of Psychoanalysis v. Cal.*
12  *Board of Psychology*
    (9th Cir. 2000) 228 F.3d 1043 . . . . . . . . . . . . . . . . . . . . . . . . . 3
13
    *Navarro v. Block*
14  (9th Cir. 2001) 250 F.3d 729 . . . . . . . . . . . . . . . . . . . . . . . . . . 3

15  *Papasan v. Allain*
    (1986) 478 U.S. 265 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
16
    *Vess v. Ciba-Geigy Corp. USA*
17  (9th Cir. 2003) 317 F.3d 1097 . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

18
    **State Cases**
19
    *Auerbach v. Great Western Bank*
20  (1999) 74 Cal.App.4th 1172 . . . . . . . . . . . . . . . . . . . . . . . . . . 11

21  *Austero v. National Casualty Co.*
    (1976) 62 Cal.App.3d 511 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
22
    *Beeler v. West American Finance Co.*
23  (1962) 201 Cal.App.2d 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

24  *C&H Foods Co. v. Hartford Insurance Co.*
    (1984) 163 Cal.App.3d 1055 . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13
25
    *California State Automobile Association v. Superior Court*
26  (1986) 184 Cal.App.3d 1428 . . . . . . . . . . . . . . . . . . . . . . . . . . 8

27  *Choate v. County of Orange*
    (2000) 86 Cal.App.4th 312 . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

*Cochran v. Cochran*
(1998) 65 Cal.App.4th 488 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Coleman v. Republic Indemnity Insurance Co. of Calif.*
(2005) 132 Cal.App.4th 403 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Cutting Fruit Packing Co. v. Canty*
(1904) 141 Cal. 692 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Davidson v. City of Westminster*
(1982) 32 Cal.3d 197 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Davis v. Superior Court*
(1959) 175 Cal.App.2d 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Docks Co. v. Superior Ct.*
(1989) 49 Cal.3d 39 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Gibson v. Government Employers Insurance Co.*
(1984) 162 Cal.App.3d 441 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Gruenberg v. Aetna Insurance Co.*
(1973) 9 Cal.3d 566 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Harris v. Rudin, Richman & Appel*
(1999) 74 Cal.App.4th 299 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Hess, et al. v. Transamerica Accidental Life Insurance Company*
(1987) 190 Cal.App.3d 941 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Kidron v. Movie Acquisition Corp.*
(1995) 40 Cal.App.4th 1571 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Laird v. Capital Cities*
(1998) 68 Cal.App.4th 727 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Love v. Fire Insurance Exchange*
(1990) 221 Cal.App.3d 1136 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Mesler v. Bragg Management Co.*
(1985) 39 Cal.3d 290 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Mintz v. v. Blue Cross of California*
(2009) 172 Cal.App.4th 1594 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Molko v. Holy Spirit Association*
(1988) 46 Cal.3d 1092 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Mosier v. Southern California Physicians Insurance Exchange*
(1998) 63 Cal.App.4th 1022 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Northern Natural Gas Co. v. Superior Ct.*
(1976) 64 Cal.App.3d 983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

CV 10-01374 EMC
MOTION TO DISMISS

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

*Pacific Gas & Electric Co. v. Bear Stearns & Co.*
(1990) 50 Cal.3d 1118 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Reichert v. General Insurance Co.*
(1968) 68 Cal.2d 822 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Sanchez v. Lindsey Morden Claims Services, Inc.*
(1999) 72 Cal.App.4th 249 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Schlauch v. Hartford Accident & Indemnity Co.*
(1983) 146 Cal.App.3d 926 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*State of California ex rel. Metz v. CCC Information Services, Inc.*
(2007) 149 Cal.App.4th 402 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Tomaselli v. Transamerica Insurance Co.*
(1994) 25 Cal.App.4th 1766 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Vasquez v. Superior Court*
(1971) 4 Cal.3d 800 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**Federal Statutes**

Federal Rules of Civil Procedure, Rule 12(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

28 U.S.C. § 1441 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

4821-2457-0118.1

-iv-

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2  **I.**   **INTRODUCTION**

3       **A.**   **Procedural Status**

4         Plaintiff filed a complaint in San Francisco Superior Court on January 18, 2010 against

5   Defendants AIG Risk Management, Inc., AIG Construction Risk Management Group, American

6   International Companies, American International Group of Companies, American International

7   Group, Inc., National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), and

8   DOES One through Twenty. AIG Risk Management, Inc. was served on March 3, 2010 and

9   National Union was served on March 4, 2010. On April 1, 2010, National Union and AIG Risk

10   Management, Inc. filed a Notice of Removal under 28 U.S.C. § 1441(b). On April 6, 2010, AIG

11   Risk Management, Inc. and National Union filed a Motion to Dismiss pursuant to F.R.C.P. 12(b)(6)

12   and a Motion to Strike, both of which are now set for hearing on June 16, 2010.

13         On April 12, 2010, American International Group, Inc. ("AIG, Inc.") was served with the

14   complaint and now moves to dismiss Plaintiff's complaint against it.

15       **B.**   **Factual Background**

16         Plaintiff alleges causes of action for (1) breach of contract, (2) breach of the covenant of

17   good faith and fair dealing, (3) fraud and deceit, (4) interference with contractual relations, (5)

18   intentional infliction of emotional distress, and (6) conspiracy, all allegedly arising out of Plaintiff's

19   claim for underinsured motorist benefits purportedly due under an insurance contract between

20   Plaintiff's employer, Tutor-Saliba, and Defendants. Plaintiff alleges that Tutor-Saliba purchased

21   motor vehicle insurance from "Defendants" and "each of them" which covered Plaintiff for an

22   automobile accident on May 24, 2004 during the course and scope of her employment as an iron

23   worker for Tutor-Saliba. Plaintiff alleges she was severely injured on May 24, 2004 when she was

24   driving a Tutor-Saliba GMC vehicle and was struck by a third-party vehicle driven by underinsured

25   motorist Saengphet Phimphavanh.

26         Following the collision on May 24, 2004, Plaintiff alleges she filed an action against

27   Saengphet Phimphavanh ("Phimphavanh") which was ultimately settled in early 2006 when his

28   insurer, State Farm, paid Plaintiff policy limits of $25,000. After settling her claim against

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

4821-2457-0118.1

-1-

CV 10-01374 EMC
MOTION TO DISMISS

1  Phimphavanh, Plaintiff made a claim against her employer, Tutor-Saliba, for workers'

2  compensation benefits through Tutor-Saliba's insurance carrier, "AIG," and received benefits

3  totaling $108,000.[1]  Despite receiving combined benefits of approximately $133,000 from State

4  Farm and "AIG", Plaintiff alleges she was not fully compensated for her injuries.  She thereafter

5  made a claim for underinsured motorist benefits allegedly due under the policy issued by

6  "Defendants" to Tutor-Saliba.  During the course of making her claim against "Defendants," she

7  made contact with Deborah Paules who Plaintiff alleges was associated in some capacity with AIG

8  Construction Risk Management.  (Complaint, ¶ 12.)

9      Plaintiff ultimately settled her underinsured motorist claim with "Defendants" and was paid

10  an agreed-to settlement amount.  She now claims that "Defendants" unreasonably delayed payment

11  of the settlement in bad faith, resulting in emotional distress, financial distress and economic

12  damages and further entitling Plaintiff to punitive damages.

13      **C.    Allegations Regarding The Insurance Contract**

14      Plaintiff makes the following conclusory allegations regarding the purported insurance

15  policy allegedly issued by "Defendants" to Plaintiff's employer, Tutor-Saliba:

16      "Tutor-Saliba purchased insurance coverage for the Richmond Bridge
        construction project from defendants and each of them.  In consideration of
17      the payment of a premium defendants and each of them issued a policy of
        insurance providing motor vehicle insurance coverage for Tutor-Saliba
18      company vehicles as of May 24, 2004, the policy of insurance bearing policy
        contract number CA 826-15-77. . . In the Policy, defendants and each of them
19      undertook to and did provide insurance coverage to employees of Tutor-
        Saliba driving company vehicles with permission in the course and scope of
20      their employment.  The Policy insured employees of Tutor-Saliba driving
        company vehicles with permission, including TAMMI JONES, against loss
21      resulting from automobile accidents caused by underinsured motorists, up to
        the amount of $1,000,000 per occurrence, less the amount of the insurance
22      policy limits recovered from responsible parties. . . . The Policy was in effect
        as of May 24, 2004.  The vehicles covered by the Policy included the Tutor-
23      Saliba GMC Sierra truck, License Number 6C11751."

24  (Plaintiff's Complaint, ¶ 8, lines 5-12.)

25      Plaintiff's complaint provides no other information about the effective dates of the policy,

26  the terms and conditions, the scope of coverage, who is covered, any applicable exclusions and/or

27  _____

28      [1]   Although not centrally relevant to the present motion, it bears noting that "AIG" is a trade
        name, not a company or other business entity.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

4821-2457-0118.1                    -2-

1   conditions precedent to coverage and does not attach a copy of the pertinent policy.

2   **D.      Allegations Regarding Defendants' Identity and Capacity**

3   Plaintiff alleges that "*defendants and each of them*" issued a policy of insurance "providing

4   motor vehicle insurance coverage for Tutor-Saliba Company vehicles" (Complaint, ¶8, lines 8 - 9.)

5   Although Plaintiff alleges in paragraph 8 that "each defendant" purportedly issued a policy of

6   insurance, Plaintiff identifies only National Union as an "insurer" (Complaint, ¶¶ 4, 29).  Plaintiff

7   alleges that four of the remaining Defendants, including AIG, Inc., are "business organizations, form

8   unknown."  (Complaint, ¶ 3.)  Plaintiff alleges that the sixth Defendant, AIG Risk Management,

9   Inc., is involved in "insurance services" (Complaint, ¶ 2).  Despite these clearly contradictory

10  allegations in the body of the complaint, Plaintiff premises her entire claims against these

11  Defendants around the issuance of the pertinent policy by "defendants and each of them."

12  (Complaint, ¶ 8.)

13  **II.     LEGAL STANDARD**

14  **A.      Rule 12(b)(6) Standards**.

15  This Court may dismiss a claim when "there is no cognizable legal theory or an absence of

16  sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block* (9th Cir. 2001) 250

17  F.3d 729, 732.  As the Supreme Court has emphasized, "labels and conclusions, and a formulaic

18  recitation of the elements of a cause of action will not" survive a motion to dismiss. *Bell Atlantic*

19  *Corp. v. Twombly* (2007) 127 S.Ct. 1955, 1965-66. *See also Nat'l Ass'n for Advancement of*

20  *Psychoanalysis v. Cal. Bd. of Psychology* (9th Cir. 2000) 228 F.3d 1043, 1049 ("Conclusory

21  allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for

22  failure to state a claim.").

23  In *Bell Atlantic Corp. v. Twombly, supra*, the United States Supreme Court explained:

24  "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain

25  statement of the claim showing that the pleader is entitled to relief.'"  While the pleading standard

26  announced by Rule 8 does not require "detailed factual allegations," it "demands more than an

27  unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 555. (Citing *Papasan v. Allain*

28  (1986) 478 U.S. 265, 286).  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

4821-2457-0118.1                              -3-

CV 10-01374 EMC
MOTION TO DISMISS

1 | "further factual enhancement." *Id.* at 557.

2 |     To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

3 | as true, to "state a claim to relief that is plausible on its face." *Id.* at 570.  A claim has facial

4 | plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

5 | inference that the defendant is liable for the misconduct alleged.  *Id.* at 556.  The plausibility

6 | standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a

7 | defendant has acted unlawfully.  *Id.*  Where a complaint pleads facts that are "merely consistent

8 | with" a defendant's liability, it "stops short of the line between possibility and plausibility of

9 | 'entitlement to relief.'" *Id.* at 557.  *See also Ashcroft v. Iqbal* (2009) U.S. LEXIS 3472.

10 | **III.**    **PLAINTIFF FAILS TO ALLEGE FACTS SUFFICIENT TO SUPPORT HER**
11 |        **CLAIM FOR BREACH OF CONTRACT AGAINST AIG, INC.**

12 |     Pleading a cause of action for breach of contract requires pleading (1) the existence of the

13 | contract, (2) the plaintiff's performance or excuse for performance, (3) the defendant's breach, and

14 | (4) damage to the plaintiff.  (*See, e.g., Cutting Fruit Packing Co. v. Canty* (1904) 141 Cal. 692, 695;

15 | *Reichert v. General Ins. Co.* (1968) 68 Cal. 2d 822, 830.  *See also,* CACI 303, Breach of

16 | Contract—Essential Factual Elements (Rev. June 2006).)  Plaintiff is further required to set out the

17 | terms of the contract verbatim in the body of the complaint or attach a copy of the written agreement

18 | itself.  *Harris v. Rudin, Richman & Appel* (1999) 74 Cal.App.4th 299, 307.

19 |     As set forth more fully above, Plaintiff does not plead any specific terms of the insurance

20 | contract or attach a copy of the policy.  All Plaintiff alleges is that there was a policy in existence

21 | which provided underinsured coverage for injuries she allegedly sustained in the May 24, 2004

22 | accident.  Such conclusory allegations are insufficient to state a claim against any named defendant.

23 |     As pled, neither the Court nor AIG, Inc. can ascertain whether the contract purportedly

24 | breached was oral, written, partly oral, partly written, or implied in fact.  Therefore, Plaintiff's cause

25 | of action for breach of contract should be dismissed for failure to state a claim.

26 | **IV.**    **PLAINTIFF HAS NOT STATED A BREACH OF CONTRACT CAUSE OF ACTION**
27 |        **AGAINST AIG, INC. BECAUSE SHE HAS NOT ALLEGED IT IS A PARTY TO THE INSURANCE CONTRACT**

28 |     Even assuming *arguendo* that this Court finds Plaintiff has alleged a *prima facie* cause of

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

1     action for breach of contract against National Union as the insurer, Plaintiff has not alleged the

2     existence of a contract between herself and Defendant, AIG, Inc., which is a publicly traded holding

3     company.  (See Defendant's Request for Judicial Notice filed concurrently herewith.)

4           It is axiomatic that for a plaintiff to bring a breach of contract action against a defendant, the

5     plaintiff and defendant must have a contractual relationship.  *Hess, et al. v. Transamerica*

6     *Accidental Life Insurance Company* (1987) 190 Cal.App.3d 941.  The California Supreme Court

7     explained in *Docks Co. v. Superior Ct.* (1989) 49 Cal.3d 39, that only an insurer can be held liable

8     for breach of contractual duties owed by an insurer to its insured.  Here, Defendant AIG, Inc. is not

9     an insurer and, therefore, cannot be held liable for breach of the insurance contract.

10   **V.    BREACH OF CONTRACT AND BAD FAITH CLAIMS CANNOT BE ASSERTED**

11          **AGAINST AIG, INC. AS A HOLDING COMPANY**

12           California courts have repeatedly held that claims for breach of contract and bad faith cannot

13     be sustained against non-insurer defendants.  *Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal. 3d 566;

14     *Austero v. National Cas. Co.* (1976) 62 Cal.App.3d 511, 515-516; *Sanchez v. Lindsey Morden*

15     *Claims Services, Inc.* (1999) 72 Cal.App.4th 249, 253.  In *Gruenberg, supra,* the California

16     Supreme Court upheld the trial court's ruling sustaining the demurrer of non-insurer defendants to

17     causes of action for breach of contract and bad faith.  The non-insurer defendants were alleged to

18     have been agents of the insurers acting within the course and scope of that agency when the alleged

19     claim handling conduct occurred.  But because these claim handling agents were not alleged to be

20     the insurer, no cause of action for breach of contract or bad faith could be sustained.  (*Id.,* 9 Cal.3d

21     at 571.)

22           Like *Gruenberg,* Plaintiff's complaint here establishes that the only named Defendant

23     potentially chargeable with claims for breach of the contract and bad faith is National Union.

24     (Complaint, ¶¶ 2-4.)  Plaintiff's conclusory allegations that each Defendant was "acting as an agent

25     and employee of every other defendant" (Complaint, ¶ 7) are insufficient to state a breach of

26     contract claim against a non-insurer.  As the Court in *Gruenberg* opined:

27               "Plaintiff alleges that Brown, the insurance adjusting firm, and its

28               employee . . . were agents and employees of defendant insurers and of
                   each other and were acting within the scope of that agency and

**LEWIS**
**BRISBOIS**
**BISGAARD**
**& SMITH LLP**

1      employment when they committed the acts attributed to them.

2   However, plaintiff contends that these non-insurer defendants breached only the duty of good faith and fair dealing; therefore, we

3   need not consider the possibility that they may have committed another tort in their respective capacities as total strangers to the

4   contracts of insurance.  Obviously, the non-insurer defendants were not parties to the agreements for insurance; therefore, they are not, as

5   such, subject to the implied duty of good faith and fair dealing. Moreover, as agents and employees of defendant insurers, they cannot

6   be held accountable on a theory of conspiracy [because all their conduct is alleged to have been within the course and scope of the

7   agency or employment].  (*Wise v. Southern Pacific Co.*, (1963) 233 Cal.App.3d 50, 72  . . . This rule, as explained in *Wise* (at pp. 72-73)

8   'derives from the principle that ordinarily corporate agents and employees acting for and on behalf of the corporation cannot be held

9   liable for inducing a breach of the corporations' contract since being in a confidential relationship to the corporation their action in this

10   respect is privileged.' (*See also, Mallard v. Boring*, (1960) 182 Cal.App.2d 390,393 . . .)  Accordingly, the judgment of dismissal in favor of the non-insurer defendants must be affirmed."

11

12   (*Gruenberg, supra*, 9 Cal.3d at 576.)

13        Because no Defendant other than National Union issued any insurance policy to Plaintiff or

14   her employer, there is no question that liability for breach of contract or bad faith cannot be

15   imposed.  Plaintiff's breach of contract and bad faith claims against AIG, Inc. should therefore be

16   dismissed, without leave to amend.

17   **VI.   PLAINTIFF'S COMPLAINT AGAINST AIG, INC. SHOULD BE DISMISSED**

18          **BECAUSE PLAINTIFF DID NOT AND CANNOT ALLEGE MANAGEMENT AND CONTROL**

19        A "parent corporation is not liable on the contract . . . of its subsidiary simply because it is a

20   wholly owned subsidiary." *Northern Natural Gas Co. v. Superior Ct.* (1976) 64 Cal.App.3d 983,

21   992. "Corporate entities are presumed to have separate existences, and the corporate forms will be

22   disregarded only when the ends of justice require this result." *Laird v. Capital Cities* (1998) 68

23   Cal.App.4th 727, 737 [holding parent company not the employer of its subsidiary's employees].

24        This Court considered the issue of whether a parent corporation of an insurance company

25   could be held liable for bad faith in *Monaco v. Liberty Life Assurance Co.* (N. Dist. Cal. 2007) U.S.

26   DIST. LEXIS 11741.  In *Monaco*, the claimant alleged that the subsidiary was wholly owned by the

27   parent and that the subsidiary's operations were controlled and managed by the parent such that the

28   entities operated as a single insurance company.  Defendants therein insisted that the claims against

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

1 the parent required dismissal because the parent was not a party to the insurance contract at issue.

2 The court held that the parent could not be directly liable because the parent was not a party to the

3 contract. However, the *Monaco* court held that the claimant's alter-ego allegations were sufficient

4 to preclude dismissal because Monaco alleged, inter alia, that the parent controlled the subsidiary to

5 the extent that the entities acted as a single company. No such allegations are present here.

6       To justify piercing the corporate veil on an alter-ego theory, thereby holding a parent

7 corporation liable for the act or omissions of its subsidiary, plaintiffs must establish two elements:

8 (1) that there is such a unity of interest and ownership that the separate personalities of the

9 corporation and its owner no longer exist; and (2) that, if the acts are treated as those of the

10 corporation alone, an inequitable result will follow. *(See, e.g., Mesler v. Bragg Management Co.*

11 (1985) 39 Cal3d 290, 300; *Laird v. Capital Cities/ABC, Inc.* (1998) 68 Cal.App.4th 727, 737.)

12       Here, Plaintiff has not alleged and cannot allege such pervasive management and control by

13 AIG, Inc. over National Union to establish a legally cognizable claim against AIG, Inc. Moreover,

14 Plaintiff has not and cannot allege that injustice would result because National Union could not

15 satisfy any potential judgment. Therefore, AIG, Inc.'s Motion to Dismiss should be granted.

16 **VII.   PLAINTIFF'S CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD**
**FAITH AND FAIR DEALING MUST FAIL**
17

18       The essential elements of a cause of action for breach of the implied covenant of good faith

19 and fair dealing are: (1) the withholding of benefits which are due under the policy; (2)

20 unreasonably or without proper cause. *Love v. Fire Ins. Exchange* (1990) 221 Cal. App. 3d 1136,

21 1151. Like a cause of action for breach of contract, an action for breach of the implied covenant of

22 good faith and fair dealing requires as a prerequisite to liability, the existence of a contractual

23 relationship. (See, generally, *Gruenberg, supra,* at 576; *C&H Foods Co. v. Hartford Ins. Co.* (1984)

24 163 Cal.App.3d 1055, 1067-68.)

25       The implied covenant of good faith and fair dealing is, by its nature, based on and

26 completely dependent upon the existence of an insurance contract between the parties. *Gruenberg,*

27 *supra,* at 575. Hence, the deficiencies noted above regarding Plaintiff's contract claim are equally

28 applicable to the complaint's allegations of breach of the duty of good faith and fair dealing. An

**LEWIS**
**BRISBOIS**
**BISGAARD**
**& SMITH LLP**

4821-2457-0118.1           -7-

1   insurer can only breach the covenant of good faith and fair dealing when it withholds benefits

2   actually due under the policy without good cause. *Love v. Fire Ins. Exch.* (1990) 221 Cal.App.3d

3   1136, 1151-52.

4        In *Tomaselli v. Transamerica Ins. Co.* (1994) 25 Cal.App.4th 1766, the Court emphasized

5   that without a breach of contract, there can be no breach of the implied covenant of good faith and

6   fair dealing:

7           "Our conclusion that a bad faith claim cannot be maintained unless
        policy benefits are due is in accord with the policy in which the duty

8           of good faith is rooted. The covenant of good faith and fair dealing is
        implied in law to assure that a contracting party 'refrains from doing

9           anything to injure the right of the other to receive the benefits of the
        agreement.' [Citation omitted.] In essence, the covenant is implied as

10          a supplement to the express contractual covenants, to prevent a
        contracting party from engaging in conduct which (while not

11          technically transgressing the express covenants) frustrates the other
        party's rights to the benefits of the contract. . . . Absent [the] primary

12          right, however, the auxiliary implied covenant has nothing upon
        which to act as a supplement, and should not be endowed with an

13          existence independent of its contractual underpinnings.
        [Citation omitted.]"

14

15  *Tomaselli, supra*, at 1772.

16       A breach of the underlying insurance contract is an essential element of the claim for bad

17  faith, and not merely an indicator of bad faith. In other words, unless the insurer withheld an

18  insurance contract benefit wrongfully, there is no bad faith. *Gibson v. Government Employers Ins.*

19  *Co.* (1984) 162 Cal.App.3d 441, 448, ["Plaintiffs have not cited, and we have not found, any case

20  which extends . . . a covenant of good faith and fair dealing owed by an insurer or insurance

21  company or its insured beyond the terms of the insurance contract in force between them."];

22  *California State Auto. Assn. v. Superior Court* (1986) 184 Cal.App.3d 1428, 1433, ["CSAA

23  correctly posits that no award [for bad faith] can be made without first establishing that coverage

24  exists."].

25       Here no contract is alleged between Tutor-Saliba and Defendant AIG, Inc. and Plaintiff does

26  not allege that AIG, Inc. withheld benefits. Because a breach of duty owed under the insurance

27  contract is a condition precedent to a claim for breach of the implied covenant, and because no

28  Defendant, other than National Union, had a contractual relationship with Plaintiff or Plaintiff's

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

4821-2457-0118.1         -8-

CV 10-01374 EMC
MOTION TO DISMISS

1   employer, the cause of action for bad faith must be dismissed as to Defendant AIG, Inc.

2   **VIII.   PLAINTIFF CANNOT STATE A CLAIM FOR INTENTIONAL INFLICTION OF
         EMOTIONAL DISTRESS**
3

4       Plaintiff brings a completely spurious claim for intentional infliction of emotional distress.

5   Case after case has held that a denial of an insurance claim, or a delay in paying insurance benefits,

6   is not sufficiently extreme and outrageous conduct to support a cause of action for intentional

7   infliction of emotional distress.

8       "The tort of intentional infliction of emotional distress is comprised of three elements: (1)

9   extreme and outrageous conduct by the defendant with the intention of causing, or reckless

10  disregard of, the probability of causing, emotional distress; (2) the plaintiff suffered severe or

11  extreme emotional distress; and (3) the plaintiff's injuries were actually and proximately caused by

12  the defendant's outrageous conduct." *Cochran v. Cochran* (1998) 65 Cal.App.4th 488, 494.  In

13  order to satisfy the first requirement of the tort, the alleged conduct ". . . must be so extreme as to

14  exceed all bounds of that usually tolerated in a civilized community." *Davidson v. City of*

15  *Westminster* (1982) 32 Cal.3d 197, 209.

16      Plaintiff alleges that "Defendant" delayed the payment of benefits for Plaintiff's

17  underinsured motorist claim from the day they reached a tentative agreement on November 12, 2007

18  until January 23, 2009, when Plaintiff received the settlement draft from National Union.

19  (Complaint, ¶¶ 25-29.)  Plaintiff alleges that "Defendants" and "each of them" "intentionally

20  withheld underinsured motorist benefits" even though Defendants had knowledge that Plaintiff was

21  injured and out of work and "desperate for money and harassed by creditors."  (Complaint, ¶ 62)

22  Plaintiff further alleges that Defendants' withholding of money was "intentional and malicious and

23  done for the purpose of causing Plaintiff to suffer humiliation, mental anguish and emotional and

24  physical distress."  (Complaint, ¶ 62.)

25      California courts have repeatedly held that delay or denial of insurance claims is not

26  sufficiently outrageous to state a cause of action for intentional infliction of emotional distress.

27  *Coleman v. Republic Indemnity Ins. Co. of Calif.* (2005) 132 Cal.App.4th 403, 417.  Moreover, in

28  *Schlauch v. Hartford Accident & Indemnity Co.* (1983) 146 Cal.App.3d 926, 936, the court

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

4821-2457-0118.1                              -9-

1   specifically found an insurer's delay of one and a half years in tendering policy benefits did not

2   qualify as outrageous conduct. Here, Plaintiff alleges just over one year in delays but also alleges an

3   ongoing dispute during this time frame regarding the terms of the settlement agreement and release

4   required in exchange for the settlement draft. Therefore, on the face of the complaint, Plaintiff

5   tenders a reasonable explanation for the delay. (Complaint, ¶¶ 25-29.)

6        Most recently, in *Mintz v. v. Blue Cross of California* (2009) 172 Cal.App.4th 1594, the

7   Court of Appeal reaffirmed this precedent holding that the denial of health insurance benefits, even

8   in a life or death situation, did not give rise to a claim for intentional infliction of emotional distress.

9   In *Mintz, supra,*, plaintiff alleged that Blue Cross denied the insured potentially life-saving

10  experimental health care he needed, knowing he was dying of cancer. The court found that even in

11  such dire circumstances, such conduct was not enough to state a cause of action for intentional

12  infliction of emotional distress. Therefore, under the circumstances outlined by Plaintiff, her cause

13  of action for intentional infliction of emotional distress must fail.

14  **IX.     PLAINTIFF FAILS TO STATE A CLAIM FOR FRAUD**

15       The gravamen of Plaintiff's cause of action for fraud is:

16           "Defendants and each of them represented that upon the terms and
             conditions of the Policy, defendants and each of them would pay
17           without unreasonable delay to an insured under the Policy the following:
             The amount of damages which such insured was legally entitled to collect
18           from an underinsured motorist causing bodily injury, following payment
             of the Policy limit of the underinsured motorist, up to the amount of
19           $1,000,000." (Complaint, ¶ 46.)

20       According to the complaint, these representations were "false and fraudulent." (Complaint,

21  ¶ 47.)

22       Even though an action in federal court is subject to notice pleading, fraud allegations must

23  nonetheless meet the strictest pleading requirements of Rule 9. *Vess v. Ciba-Geigy Corp. USA* (9th

24  Cir. 2003) 317 F.3d 1097, 1103. "Averments of fraud must be accompanied by 'the who, what,

25  when, where, and how'" of the misconduct charged. *Id.*, citing *Cooper v. Pickett* (9th Cir. 1997)

26  137 F.3d 616, 627. Rule 9(b) requires Plaintiff to plead with:

27           "particularity as to the circumstances of the fraud – this requires
             pleading facts that by any definition are 'evidentiary': time, place,
28           person, statements made, explanations of why or how such statements

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

4821-2457-0118.1                              -10-

1   are false or misleading."

2   *In re GlenFed Inc. Sec. Litig.* (9th Cir. 1994) 42 F.3d 1541, 1547 n.7. *See also Vess, supra,* 317

3   F.3d at 1106; [The circumstances constituting fraud shall be pled "with a high degree of

4   meticulousness."] *Desaigoudar v. Meyercord* (9th Cir. 2000) 223 F.3d 1020, 1022-23. Allegations

5   failing to meet this heightened standard are "disregarded" or "stripped from the claim," and the

6   remaining allegations are evaluated to see if a valid claim has been stated. *Vess, supra,* 317 F.3d at

7   1105 (quotations omitted).

8        The elements of a fraud cause of action are (1) false representations, (2) made with

9   knowledge of their falsity, (3) made with intent to induce reasonable reliance by plaintiff, (4)

10   reliance, and (5) damage. *Vasquez v. Superior Court* (1971) 4 Cal. 3d 800, 811. The only

11   communications alleged with specificity by Plaintiff are Plaintiff's communications with Deborah

12   Paules, who is alleged to be associated with AIG Construction Risk Management Group. There is

13   no allegation that any representations were made by anyone associated with Defendant, AIG, Inc.,

14   and therefore there is no basis for a claim of fraud as to this Defendant. Plaintiff has not alleged the

15   requisite misrepresentation to satisfy even the first element of a cause of action for fraud.

16        Plaintiff also failed to plead justifiable reliance which, for the purpose of a fraud claim,

17   exists when defendant's misrepresentation or concealment caused Plaintiff to alter her legal

18   relations. *Auerbach v. Great Western Bank* (1999) 74 Cal. App. 4th 1172, 1184-85, 88 Cal. Rptr. 2d

19   718, citing *Molko v. Holy Spirit Assn.* (1988) 46 Cal. 3d 1092, 1108, 252 Cal. Rptr. 122, 762 P.2d

20   46.

21   **X.    PLAINTIFF FAILS TO STATE A CLAIM FOR CONSPIRACY**

22        The elements of a civil conspiracy are "(1) the formation and operation of the conspiracy; (2)

23   the wrongful act or acts done pursuant thereto; and (3) the damage resulting." *Mosier v. Southern*

24   *California Physicians Insurance Exchange* (1998) 63 Cal.App.4th 1022, 1048.

25        Such allegations are disfavored in the law because of the easy manner in which they can be

26   alleged. *Choate v. County of Orange* (2000) 86 Cal.App.4th 312, 333.

27            "Because civil conspiracy is so easy to allege, plaintiffs have a
             weighty burden to prove it. They must show that each member of the
28            conspiracy acted in concert and came to a mutual understanding to

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

4821-2457-0118.1                                -11-

1    accomplish a common and unlawful plan, and that one or more of
     them committed an overt act to further it. It is not enough that the
2    conspiring officers knew of an intended wrongful act, they had to
     agree--expressly or tacitly--to achieve it. Unless there is such a
3    meeting of the minds, the independent acts of two or more
     wrongdoers do not amount to a conspiracy."
4

5         In light of the disfavored nature of the legal theory, courts require specific evidence of each

6    element of the conspiracy. *Kidron v. Movie Acquisition Corp.* (1995) 40 Cal.App.4th 1571, 1582.

7    In *Kidron*, the court held:

8         "'[t]here must be some evidence. Mere association does not make
          a conspiracy. There must be evidence of some participation or interest
9         in the commission of the offense.' An inference must flow logically
          from other facts established in the action.'"
10

11   (*Id.*, quoting *Davis v. Superior Court* (1959) 175 Cal.App.2d 8, 23.)

12        In *Beeler v. West American Finance Co.* (1962) 201 Cal.App.2d 702, the Court of Appeal

13   upheld the sustaining of a demurrer based upon allegations that the defendants had conspired to

14   make intentional misrepresentations and to use fraud and deceit with respect to a real estate

15   transaction. There, the court found that because there were no statements attributed to the

16   defendant, and the sole basis for the conspiracy cause of action were pled in generalities and

17   conclusions of law, the demurrer was properly sustained. (*Id.* at 707.)

18        Similarly, in *State of California ex rel. Metz v. CCC Information Services, Inc.* (2007) 149

19   Cal. App. 4th 402, 419, the California Court of Appeal upheld the sustaining of a demurrer without

20   leave to amend, holding that the boilerplate conspiracy allegations were insufficient to state a cause

21   of action as a matter of law. There, the court explained:

22        "[i]n order to state a cause of action based upon a conspiracy theory
          the plaintiff must allege the formation and operation of the
23        conspiracy, the wrongful act or acts done pursuant to it, and the
          damage resulting from such acts. [Citation.] In making such
24        allegations bare legal conclusions, inferences, generalities,
          presumptions, and conclusions are insufficient. [Citation.] Metz's
25        conspiracy allegations—that CCC and unnamed defendants conspired
          to conceal their improper loss valuations—amount to bare legal
26        conclusions."

27   (*Id.* at 419.)

28        Here, Plaintiff has pled no facts to support her theory that AIG, Inc., or for that matter, any

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

4821-2457-0118.1                                   -12-

                                                        CV 10-01374 EMC
                                                        MOTION TO DISMISS

1  defendant, was involved in any conspiracy to defraud her.  As set forth more fully above, Plaintiff

2  has not pled any facts to suggest that she entered into any agreement with AIG, Inc. or that AIG, Inc.

3  participated in, or had any involvement with, the purported conspiracy.  Moreover, Plaintiff has not

4  pled how, if at all, AIG, Inc. knew of the purpose or intent of the other defendants or any wrongful

5  act that Defendants did to further any alleged conspiracy.  In short, Plaintiff fails to plead facts to

6  support any element required for civil conspiracy against AIG, Inc.

7  **XI.   PLAINTIFF'S CAUSE OF ACTION FOR INTENTIONAL INTERFERENCE WITH**

8  **CONTRACT IS WITHOUT MERIT**

9       The elements Plaintiff must plead to state a cause of action for intentional interference with

10  contract are: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of

11  this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the

12  contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5)

13  resulting damage.  *Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126.

14       Here, Plaintiff alleges she had a "relationship" with the "insurer" and that Defendants

15  "delayed and disputed" that economic relationship.  (Complaint, ¶ 54.)  However, Plaintiff fails to

16  allege facts showing that this Defendant, who is alleged to be a "business organization," did

17  anything to interfere with any alleged contract and, most importantly, as set forth fully above, that

18  Plaintiff ever had a contract with AIG, Inc.

19       In order to survive a motion to dismiss or a demurrer, plaintiffs must plead more than vague

20  conclusions of fact; they must plead the actual facts leading to that conclusion.  *C&H Foods Co. v.*

21  *Hartford Ins. Co.* (1984) 163 Cal.App.3d 1055, 1062.  Instead of merely pleading the conclusion of

22  intent, plaintiffs need to plead *facts* explaining who acted, which contract was interfered with, why

23  or how defendants' conduct interfered, and what harm plaintiffs actually suffered as a result.

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

4821-2457-0118.1                           -13-

1   **XII.    CONCLUSION**

2          Based on the foregoing, Defendant AIG, Inc. respectfully requests that this Court dismiss

3   without leave to amend, Plaintiff's first through sixth causes of action against it.

4

5   DATED: April 30, 2010                    LEWIS BRISBOIS BISGAARD & SMITH LLP

6

7                                            By  /s/ Rebecca R. Weinreich

8                                                Rebecca R. Weinreich
                                                 Hellar-Ann Hancock

9                                                Attorneys for Defendants AIG RISK MANAGEMENT,
                                                 INC., NATIONAL UNION FIRE INSURANCE
                                                 COMPANY OF PITTSBURGH, PA and AMERICAN

10                                               INTERNATIONAL GROUP, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

**FEDERAL COURT PROOF OF SERVICE**
*Tammi Jones v. AIG Risk Management, et al.* - File No. 6234-7811

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and not a party to the action.  My business address is 221 North Figueroa Street, Suite 1200, Los Angeles, California 90012.  I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On April 30, 2010, I served the following document(s): **DEFENDANT AMERICAN INTERNATIONAL GROUP, INC.'s MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE, RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

> Edward M. Mastrangelo, Esq.
> MASTRANGELO LAW OFFICES
> A Professional Corporation
> Two Theatre Square, Suite 234
> Orinda, CA 94563
> Telephone:   925-258-0500
> Facsimile:   925-254-0550

> *Attorney for Plaintiffs*

The documents were served by the following means:

[ ]   (BY U.S. MAIL)  I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses listed above and I deposited the sealed envelope or package with the U.S. Postal Service, with the postage fully prepaid.

[ ]   (BY OVERNIGHT DELIVERY) Based on an agreement of the parties to accept service by overnight delivery, I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses listed above.  I placed the envelope or package for collection and delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

[X]   (BY COURT'S CM/ECF SYSTEM)  Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed above.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on April 30, 2010, at Los Angeles, California.

Annette E. Jacques

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

4821-2457-0118.1

CV 10-01374 EMC
MOTION TO DISMISS