United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMMI JONES, | No. C-10-1374 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING PART DEFENDANTS' MOTION TO STRIKE AND MOTION TO DISMISS** |
| AIG RISK MANAGEMENT, INC., *et al.*, | |
| Defendants. | **(Docket Nos. 5-6, 15-16)** |
| _____/ | |

Plaintiff Tammi Jones filed suit against multiple defendants, including American International Group, Inc. ("AIG, Inc."), AIG Risk Management Inc. ("AIG Risk Management"), and National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), as a result of injuries she suffered in an automobile wreck.

Currently pending before the Court are motions to dismiss and motions to strike filed by AIG, Inc., AIG Risk Management, and National Union (collectively, "Defendants"). Having considered the parties' briefs and accompanying submissions, as well as oral argument of counsel, the Court hereby **GRANTS** in part and **DENIES** in part both motions.

## I.   FACTUAL & PROCEDURAL BACKGROUND

In her complaint, Ms. Jones alleges as follows.

Ms. Jones was an employee of Tutor-Saliba, a construction company working on the Richmond Bridge construction project. *See* Compl. ¶ 8. On May 24, 2004, while driving a company vehicle down Highway 580, she was rear-ended by a third party, Saengpheth Phimphavanh. *See id*.

¶ 9. Ms. Jones sustained serious injuries to her spine, right shoulder, and right upper extremity in the accident. *See id*. ¶ 10.

Tutor-Saliba had purchased insurance coverage for the construction project, including motor vehicle coverage, allegedly from each Defendant. *See id.* ¶ 8 (alleging that "Tutor-Saliba purchased insurance coverage . . . from defendants and each of them"). In other words, according to Ms. Jones, each Defendant was a party to the insurance contract with and issued the insurance policy at issue to Tutor-Saliba. The policy insured Tutor-Saliba employees driving company vehicles in the scope of their employment against accidents caused by underinsured drivers, for up to $1,000,000, less any amount recovered from the responsible party. *See id*. Defendants promised to pay the employee's benefits as soon as they were informed of the amount covered by the responsible party. *See id*. The policy was in place on May 24, 2004, when Ms. Jones's accident occurred. *See id*.

Ms. Jones filed for worker's compensation benefits from Tutor-Saliba and, in February 2005, filed suit against the responsible party, Saengpheth Phimphavanh, for damages resulting from the collision. *See id*. ¶ 10. That action settled in early 2006, with Ms. Jones receiving $25,000. *See id*. ¶ 10-11. However, her damages were greater than the combined total of the $25,000 and her anticipated worker's compensation benefits, so in January 2006, Ms. Jones' counsel filed a claim for underinsured motorist ("UIM") benefits with Tutor-Saliba. *See id*. ¶ 11. On January 24, 2006, Tutor-Saliba's risk manager forwarded the request to AIG Construction Services, located in Georgia, for processing. *See id*.

Although her UIM claim was initiated in January 2006, Ms. Jones's worker's compensation proceeding did not end until November 2, 2006, when she signed a release for $108,163. *See id*. ¶ 12. Therefore, she did not submit a settlement proposal to Defendants until December 7, 2006. *See id*. ¶ 13. This is the date on which Defendants' delay in processing Ms. Jones's claim began; up to that point her claim could not be settled because the worker's compensation benefits were to be credited toward her UIM benefits. *See id*. ¶ 12.

In her settlement proposal package, Ms. Jones asked for $850,000 and provided copies of medical records, reports, and billings. *See id*. ¶ 13. The settlement proposal package was submitted to Deborah Paules, who Ms. Jones claims was an agent and employee for each Defendant. *See id*. ¶¶

12-13. Deborah Paules is purportedly an employee of AIG Construction Risk Management Group, which in turn is part of AIG Risk Management, which in turn is part of other AIG entities. *See* Compl. ¶ 12. Ms. Jones requested a response within thirty days, but Ms. Paules provided no answer for over two months. *See id.* ¶¶ 13-14. After repeated phone calls and letters, Ms. Paules told Ms. Jones's counsel that she was referring the file to Defendants' outside counsel, Dennis Babbits. *See id.* ¶¶ 14, 15-17. However, after seven months, Mr. Babbits had not received Ms. Jones's file and Defendants had not taken any action on the claim. *See id.* ¶¶ 16-19. Throughout this period, Ms. Jones's counsel sent numerous letters to both Ms. Paules and Mr. Babbits, explaining that Ms. Jones remained disabled and out of work and was suffering financial hardship and emotional distress due to the delay in handling her claim. *See id.*

In July 2007, Ms. Jones's counsel sent the settlement package directly to Mr. Babbits. *See id.* ¶ 19. In August 2007, Mr. Babbits advised that Defendants wanted Ms. Jones to undergo a medical examination within the next few weeks; however, an exam was not set up until October 16, 2007. *See id.* ¶¶ 20-21. This was to be followed by a deposition of Ms. Jones, set for January 3, 2008. *See id.* ¶ 21.

In February 2008, a mediation proceeding was held on Ms. Jones's UIM claim but the claim was not resolved, and so, in March 2008, Ms. Jones requested arbitration. Although Ms. Jones had asked Mr. Babbits to select an arbitrator as soon as possible, he did not respond until May 2008. In June 2008, Defendants attempted to switch arbitrators, and the parties were not able to agree to a new arbitrator until August. *See id.* ¶ 23. The arbitration was set for October 2008, then pushed back until November 2008. *See id.* ¶ 24.

On November 12, 2008, the day before arbitration was set to take place, Defendants offered Ms. Jones $450,000 to settle the claim. *See id.* ¶ 25. Defendants agreed that the settlement did not cover any claims Ms. Jones might have regarding Defendants' handling of her UIM claim, so she accepted the offer that day. *See id.* ¶ 25. Defendants sent Ms. Jones a release form and, again, assured her that signing did not mean she was releasing claims related to the handling of her UIM claim. *See id.* ¶ 26. However, in December 2008, Defendants notified Ms. Jones that they would

not pay the $450,000 unless she released all claims. *See id.* ¶ 27. When Ms. Jones refused and requested a rescheduling of arbitration proceedings, Defendants relented. *See id.*

Ms. Jones signed and returned the release on December 3, 2008. *See id.* However, Defendants continued to delay payment and Ms. Jones did not receive a check until January 26, 2009, over two years after she first provided Defendants with her settlement proposal. *See id.* ¶ 29. Although Ms. Jones' interactions up to this point had been with AIG-named entities, the settlement check was drafted by National Union. *See id.* National Union is not a named AIG entity but is affiliated with the AIG entities. *See id.* ¶ 4.

Subsequently, and consistent with the parties' settlement agreement, Ms. Jones initiated a lawsuit against Defendants challenging the way that Defendants had handled her UIM claim. The suit was filed in state court but was thereafter removed to federal court. In the complaint, Ms. Jones asserts the following causes of action: (1) breach of contract, (2) breach of the duty of good faith and fair dealing, (3) interference with contract, (4) fraud and deceit, (5) intentional infliction of emotional distress, and (6) conspiracy. In addition to compensatory damages, Ms. Jones seeks punitive damages with respect to all claims except for the breach-of-contract claim.

## II.   DISCUSSION

A.   Motions to Dismiss

    1.   Legal Standard

AIG Risk Management and National Union, as well as AIG, Inc., have filed motions to dismiss each of the above causes of action pursuant to Federal Rule of Civil Procedure 12(b)(6). The same basic arguments are presented in the two motions to dismiss.

Under Rule 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Business v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir.

2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). *See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Id.*

### 2. Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing

In their motions to dismiss, Defendants argue that the claims for breach of contract and breach of the implied covenant of good faith and fair dealing should be dismissed because Ms. Jones failed to plead the terms of the insurance contract at issue. Defendants also argue that the contract-based claims should be dismissed with respect to AIG, Inc. and AIG Risk Management because neither defendant was a party to the insurance contract with Tutor-Saliba – *i.e.*, only National Union was.[1]

Prior to the hearing, the Court ordered Defendants to produce a copy of the insurance contract at issue. Defendants complied. *See* Docket No. 32 (insurance policy). Now that the insurance policy has been produced, any argument that Jones failed to plead the terms of the contract is moot.

The only remaining question for the Court is who are the parties to the contract. It is well established that, under California law, only a party to an insurance contract may be held liable for breach of contract or for breach of the implied covenant of good faith and fair dealing. *See Gruenberg v. Aetna Ins. Co.*, 9 Cal. 3d 566, 576 (1973) (holding that, since the insurance adjusting firm, law firm, and their employees were not parties to the contract, they were not subject to the implied covenant of good faith and fair dealing).

---

[1] Defendants concede that Ms. Jones has standing to enforce rights under the insurance contract as an "insured" thereunder.

5

Based on the face of the insurance policy at issue, it is clear that National Union was a party to the contract. The contract indicates that coverage was being provided by National Union, and the endorsement pages reflect the same. *See* Docket No. 32, at NU 1346, 1384-86, 1392, 1398-99, 1403, 1441-43, 1449, 1455-56 (insurance policy). Defendants have conceded that National Union was a party to the contract.

Defendants contend, however, that AIG, Inc. and AIG Risk Management are not parties to the contract. Based on the insurance policy submitted by Defendants, the Court agrees. As noted above, the contract specifies that coverage was being provided by National Union only, not any other entity. The fact that AIG Risk Management allegedly played a role in the handling of Ms. Jones's UIM claim, *see* Compl. ¶ 12, is not sufficient to establish that it was a party to the contract. A party that serves as an adjuster or claims handler is not, absent other circumstances, a party to the insurance contract. *Cf. Thompson v. Cannon*, 224 Cal. App. 3d 1413, 1415 (1990) (upholding summary judgment in favor of independent insurance adjuster who handled insured's claim and was not party to the contract between insured and insurer). As for AIG, Inc., there are not even allegations that it played a role in the handling of the UIM claim. *See id.*

At the hearing, Ms. Jones pointed out that, at the top of the insurance policy at issue, an "AIG" logo is displayed, as well as the name American International Companies®. *See* Docket No. 32, at 1346 (insurance policy). But on their face, the logo and name appear as trademarks only. Similarly, while AIG, Inc.'s name is listed on certain endorsement pages of the insurance policy, that appears to be for copyright purposes only. *See* Docket No. 32, at NU 1399-1400, 1456-57 (insurance policy). Nowhere does the contract refer to AIG, Inc. or AIG Risk Management – or any AIG-named entity – as being the insurer or underwriter.

Ms. Jones argued still that it was plausible that AIG, Inc. and/or AIG Risk Management were parties to the contract, tendering for the first time at the hearing a state court pleading which was apparently filed by an AIG-named entity in conjunction with Ms. Jones's UIM claim. According to Ms. Jones, she did not initiate these UIM proceedings; rather, the UIM proceedings were initiated by the AIG-named entity. Ms. Jones contends that, by identifying itself as the respondent in the UIM proceedings, the AIG-named entity indicated that it was a party to the insurance contract. The Court

1  disagrees. First, the pleading is not part of the record and not pled. Second, even if judicial notice
2  were taken of the pleading, the fact that a party may have played a role in handling and initiating a
3  UIM claim does not in and of itself establish that it was a party to the contract rather than acting as
4  an agent. Under the current state of the pleadings, Ms. Jones has not established more than a sheer
5  possibility that other AIG entities were legal parties to the insurance contract, thus failing to satisfy
6  *Bell Atlantic* and *Iqbal*.[2]

7  Accordingly, the Court dismisses the claims for breach of contract and breach of the implied
8  covenant of good faith and fair dealing with respect to AIG, Inc. and AIG Risk Management. The
9  dismissal, however, shall be without prejudice. The Court notes that, even though it concludes that
10 the contract-based claims against AIG, Inc. and AIG Risk Management must be dismissed at this
11 juncture, it will permit Ms. Jones to take limited discovery to ascertain their role vis-a-vis the
12 insurance contract/or and her UIM claim. The Court has the ability to permit such discovery even in
13 the face of dismissal for failure to satisfy *Iqbal* and *Twombly* where, as here, relevant evidence is
14 solely within the province of Defendants, leaving open the possibility of further amendment. *Cf.*
15 *Santiago v. Walls*, 599 F.3d 749, 758-59 (7th Cir. 2010) (improper to discuss complaint where lack
16 of specificity is due to facts plaintiff cannot know for certain without discovery); *Arocho v. Nafziger*,
17 2010 WL 681679 (10th Cir. Mar. 1, 2010) at *9 (where facts known only by defendants, plaintiff
18 should be afforded opportunity to amend pleadings); *Morgan v. Hubert*, 2009 WL 1884605 (5th Cir.
19 July 1, 2009) at *5 (plaintiff cannot be requested to plead facts peculiarly within the knowledge of
20 defendants); *Tompkins v. Lasalle Bank Corp.*, 2009 WL 4349532 (N.D. Ill. Nov. 24, 2009) (plaintiff
21 should be afforded opportunity to conduct discovery into liability of parent corporation before
22 summary judgment). The Court also finds there is good cause under Federal Rule of Civil
23 Procedure 26(b)(1) to permit such discovery in this case because, while insufficient to establish

---

[2] To be sure, even though AIG, Inc. and AIG Risk Management are not, for present purposes, parties to the insurance contract such that they can be held directly liable for its breach, if it is proved (as alleged) that they acted as agents of National Union (Compl. ¶ 7), their conduct may be imputable to National Union. *See* Cal. Civ. Code § 2338 (stating that "a principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency, including wrongful acts committed by such agent in and as a part of the transaction of such business, and for his willful omission to fulfill the obligations of the principal").

plausibility under *Atlantic Bell* at this juncture, Ms. Jones's allegations suggests the possibility of AIG-entities' involvement in this matter to warrant reasonable, tailored discovery on the issue.

The claims for breach of contract and breach of the implied covenant of good faith and fair dealing with respect to National Union are viable and so its motion to dismiss is denied.

3.      Interference With Contract

In her complaint, Ms. Jones asserts that, pursuant to the insurance policy issued by Defendants to Tutor-Saliba, she had a contractual right to UIM benefits and that, by delaying the payment of benefits, Defendants interfered with that contractual right. *See* Compl. ¶ 5. In other words, Ms. Jones's basic contention is that there was an insurance contract between Tutor-Saliba and Defendants (under which she benefitted as an insured) and that Defendants interfered with that contract by delaying the benefits owed under the contract.

Defendants correctly argue that a party to a contract may not be held liable for interfering with that contract. *See Dryden v. Tri-Valley Growers*, 65 Cal. App. 3d 990, 998-99 (1977) (stating that "the tort of malicious interference with contractual relations by inducing a breach of contract is a remedy created by the common law to compensate one whose contractual relations with others are interfered with *by a third person*"; adding that "an action for inducing a breach of contract will not lie against the party to the contract") (emphasis in original). As discussed above, National Union was clearly a party to the insurance contract; therefore, as a matter of law, it cannot be held liable for interference with the same contract.

As for AIG, Inc. and AIG Risk Management, since the Court holds herein that the pleadings do not establish they are parties to the insurance contract, *Dryden* does not present a bar.[3] However, Ms. Jones has alleged that these entities were acting as agents of the contracting party National Union. *See* Compl. ¶ 7 (alleging that "each and every [D]efendant was acting as the agent and employee of every other"). California courts have held that "corporate agents and employees acting for and on behalf of a corporation cannot be held liable for inducing a breach of the corporation's

---

[3] Of course, if Ms. Jones successfully amends the complaint to allege these entities are in fact parties to the contract and proves that fact, *Dryden* would bar the interference with contract claim.

8

contract." *Mintz v. Blue Cross of California*, 172 Cal. App. 4th 1594, 1604 (2009).  Thus, the claim for interference by AIG, Inc. and AIG Risk Management must also be dismissed.

To be sure, if Ms. Jones's assertions of agency are not sustained or proven, *Mintz* would not bar a claim for interference with contract brought against a party that is neither a party to the contract nor an agent thereof.  But Ms. Jones has not pled absence of agency in the alternative.  A plaintiff is allowed to plead inconsistent claims.  *See* Fed. R. Civ. P. 8(d)(3) (stating that "[a] party may state as many separate claims or defenses as it has, regardless of consistency"); *see also First Indep. Bank of Nev. v. Mohave State Bank*, No. CV-09-8195-PCT-PGR, 2010 U.S. Dist. LEXIS 34517 (D. Ariz. Apr. 7, 2010) (stating that, "[a]s a matter of law, the rules of civil procedure expressly permit inconsistent pleadings").  However, inconsistent factual allegations must be explicitly pled in the alternative.  *See Maloney v. Scottsdale Ins. Co.*, 256 Fed. Appx. 29, 31 (9th Cir. 2007).  She has not done so here.

Accordingly, the interference claim against AIG, Inc. and AIG Risk Management is dismissed without prejudice.

4.    Fraud

In support of her fraud claim, Ms. Jones alleges that Defendants knowingly made false misrepresentations to Tutor-Saliba in order to induce it to purchase the insurance policy.  *See* Compl. ¶¶ 46-48.  As alleged, Ms. Jones's fraud claim has several problems.

First, under Federal Rule of Civil Procedure 9(b), "a party must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  This means that fraud allegations must "be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003).  In the case at bar, Ms. Jones has not provided this specific information in her complaint but rests instead on general allegations that Defendants made false representations to Tutor-Saliba.  Accordingly, the fraud claim is subject to dismissal for failure to comply with Rule 9(b) alone.

Second, even if there were no Rule 9(b) problem, Ms. Jones has failed to state a facially plausible claim for fraud because she has not included in her complaint any factual allegations supporting her contention that Defendants knew that their representations were false at the time they

9

were made. *See Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996) (holding that plaintiff stated a claim for fraud, as he alleged that defendant's representations "were false at the time they were made").

In her papers, Ms. Jones points out that "subsequent conduct of the defendants in processing a claim for benefits under the policy may support an inference of prior intent not to fulfill defendants' representations." *Miller v. Nat'l American Life Ins. Co. of CA*, 54 Cal.App.3d 331, 338-339 (1976) (finding that defendant insurance company's use of misleading wording on its forms, policy of interpreting that language in an peculiar way without warning physicians who filled out the forms, and failure to consult a particular doctor regarding an acknowledged uncertainty on plaintiff's form before terminating his benefits supported "an inference of an intent not to live up to the promised coverage"); *see also Wetherbee v. United Ins. Co. of America*, 265 Cal.App.3d 921, 932 (1968) (ruling that "defendant's eagerness to seize upon" a questionable basis for cancelling plaintiff's benefits "furnishe[d] ample support for a finding that [defendant] never intended to fulfill either the representations" made in a letter sent to plaintiff encouraging her not to cancel her policy, nor the terms of her policy). While that general proposition is true, the problem here is that Ms. Jones has not pointed to what subsequent conduct of Defendants suggested that they never intended to perform the contract in the first place. Ms. Jones has not pointed to any facts indicating that her situation is comparable to that in, *e.g.*, either *Miller* or *Wetherbee*. Indeed, based on the allegations in the complaint alone, it appears that the only subsequent conduct of Defendants was a failure to perform. However, the California Supreme Court has emphasized that "something more than nonperformance is required to prove the defendant's intent not to perform his promise." *Tenzer v. Superscope, Inc.*, 39 Cal. 3d 18, 30 (1985).

Finally, even if both problems discussed above were cured, the fraud claim is still deficient because of Ms. Jones's failure to plead the requisite reliance. Contrary to what Defendants argue, the fact that the alleged misrepresentations were made to Tutor-Saliba and not to Ms. Jones herself is not dispositive. California courts have adopted the theory of indirect misrepresentation embodied in § 533 of the Restatement of Torts, which states as follows:

> The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another who acts in justifiable reliance upon it if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and that it will influence his conduct in the transaction or type of transaction involved.

Restatement (Second) Torts § 533 (1977); *see also Varwig v. Anderson-Behel Porsche/Audi, Inc.*, 74 Cal. App. 3d 578, 581 (1977) (holding that defendant's misrepresentation to an automobile dealer was an indirect misrepresentation to the plaintiff, who purchased the car from the dealer). But even where an indirect misrepresentation is involved, there must still be reliance, and the reliance must be on the part of the indirect recipient of the misrepresentation. *See Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1096 (1993) (stating that, "[a]s the language of the Restatement indicates, a plaintiff who hears an alleged misrepresentation indirectly must still show 'justifiable reliance upon it'").

In her complaint, Ms. Jones refers to reliance on the part of Tutor-Saliba (*i.e.*, entering into the contract as a result of the alleged misrepresentations) but does not identify any reliance on her part. In her brief, she argues that Tutor-Saliba's reliance may be imputed to her, but she has not cited any authority indicating that such imputation is permissible. Indeed *Mirkin* indicates otherwise. Because Ms. Jones has not alleged any reliance on her own part, the fraud claims fails for that additional reason.

Accordingly, the Court dismisses without prejudice the claim for fraud.

5. <u>Intentional Infliction of Emotional Distress</u>

In their motions to dismiss, Defendants argue that the claim for intentional infliction of emotional distress ("IIED") should be dismissed because Ms. Jones simply alleges that Defendants delayed payment of her UIM benefits, and California courts have ruled that delay does not constitute the kind of extreme and outrageous conduct necessary to sustain a cause of action for IIED. *See, e.g.*, *Coleman v. Republic Indem. Ins. Co. of Cal.*, 132 Cal. App. 4th 403, 417 (holding that "delay or denial of insurance claims is not sufficiently outrageous" to support a cause of action for IIED).

Defendants, however, have not properly characterized Ms. Jones's complaint. The allegations in the complaint go beyond mere delay; in fact, Ms. Jones alleges that there was an established policy to delay, one intended to deprive her and others "for the purpose of retaining use

of money" that Defendants owed insureds. Compl. ¶ 38. A purposeful policy of delay or a concerted cause of conduct can provide a basis for a claim for IIED. *See Fletcher v. Western Nat'l Life Ins. Co.*, 10 Cal. App.3 d 376, 401 (1970) (holding that defendant insurance company's "concerted course of conduct to induce plaintiff to surrender his insurance policy" was outrageous conduct supporting a claim for IIED); *cf. Hernandez v. General Adjustment Bureau*, 199 Cal. App. 3d 999, 1007 (1988) (ruling that plaintiff stated a cause of action for IIED by alleging that defendants – an independent insurance adjuster and its employee – were aware of her profound mental anguish, including repeated suicide attempts, as well as the fact that she was the sole provider for her three children, yet still routinely delayed payment of benefits already approved by the insurance company). This is particularly true where, as here, it is alleged that the defendants were aware of the plaintiff's particular vulnerability.

To the extent Defendants argue that there are insufficient allegations in the complaint to support there being an established policy or concerted course of conduct, the Court does not agree. In addition to the fact that it took more than two years to receive payment after Ms. Jones provided Defendants with her settlement proposal and documentation, she experienced delay – *repeated* delay – in the handling, processing, and payment of her UIM claim at nearly every step of the way. For example, Ms. Jones alleges that there was a seven-month period, between January and July 2007, in which no action was taken on her claim despite repeated efforts by her counsel to get a response. *See* Compl. ¶¶ 13-19. Ms. Jones further alleges that other decisions resulting in additional delay of several months, such as the decision to have Ms. Jones undergo a medical exam and the decision to switch arbitrators, were made by Defendants. *See id.* ¶¶ 20, 23. When an agreement was finally reached, Defendants attempted to renege on the terms of the release. *See id.* ¶ 27. Even after the release was signed, it took nearly two months for her to receive the check. *See id.* ¶ 29. Ms. Jones has established under *Bell Atlantic* and *Iqbal* a facially plausibile claim that the repeated and lengthy delays were the result of a concerted course of conduct designed to inflict delay on a person whom Defendants knew was vulnerable.

In so concluding, the Court takes note that whether or not there is facial plausibility may be informed in part by the potential burden potentially imposed upon the Defendants were the motion

to dismiss denied.  The Seventh Circuit has explained that an implicit rationale of *Bell Atlantic* and *Iqbal* is "that a defendant should not be forced to undergo costly discovery unless the complaint contains enough detail, factual or argumentative, to indicate that the plaintiff has a substantial case." *Limestone Dev. Corp. v. Village of Lemont*, 520 F. 3d 797, 802-03 (7th Cir. 2007) (citing *Bell Atlantic*, 550 U.S. at 558-59); *Riley v. Vilsack*, 665 F. Supp. 2d 994, 1003 (W.D. Wisc. 2009) (stating that "the plausibility standard has its most force when special concerns exist about the burden of litigation on the defendant or when the theory of the plaintiff seems particularly unlikely").  *See Bell Atlantic*, 550 U.S. at 557-59 (discussing risk of allowing "in terrorem" effect on settlement if substantial expenditure of time and money are threatened," and danger of allowing "potentially massive factual controversy to proceed" if specificity in pleadings not required) (citations omitted).

In the instant case, allowing the IIED claim to proceed past the pleading stage will not force Defendants to undergo expansive discovery.  As discussed above, the contract-based claims against National Union have survived, and, in evaluating whether, *e.g.*, National Union breached the implied covenant of good faith and fair dealing, the parties will likely engage in discovery on what the policies and practices of National Union and its putative agents are and the reasons for the actions taken.  Thus, discovery on the IIED claim is likely to overlap with much of the discovery on the other claims in this action.  There would be little added burden to Defendants, therefore, in allowing Ms. Jones' IIED claim to stand at this stage.

6. <u>Conspiracy</u>

Ms. Jones asserts a claim for conspiracy against Defendants, alleging that the delay in processing her claim was intentional and agreed upon.  *See* Compl. ¶ 66.  Technically, conspiracy is not a separate cause of action; rather, it "imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design." *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-511 (1994) (citing *Wyatt v. Union Mortgage Co.*, 24 Cal. 3d 773, 784 (1979)).

Defendants challenge the conspiracy allegations, arguing that Ms. Jones's complaint does not establish any of the three necessary elements of a conspiracy: (1) formation and operation of a

conspiracy; (2) wrongful acts done in furtherance of the agreed to plan, and (3) resulting damages. *See Chicago Title Ins. Co. v. Great Western Financial Corp.*, 69 Cal. 2d 305, 316 (1968) (stating the elements of civil conspiracy).

The Court does not agree. In her complaint, Ms. Jones alleges that all Defendants "knowingly and willingly conspired and agreed among themselves to offer for sale, sell and provide insurance services to Tutor-Saliba and insureds under the Policy." Compl. ¶ 66. They also agreed "to engage in concert in the fraudulent, and wrongful tortious conduct" that she alleges in her various claims. *Id*. She identifies the damages suffered as a result. *See id*. ¶¶ 69-72. She, therefore, pleads all three necessary elements of a conspiracy.

The question is whether Ms. Jones has alleged enough non-conclusory facts to meet the plausibility standard of *Bell Atlantic* and *Iqbal*. The Court concludes she has. As stated above, she has sufficiently alleged that the repeated delays in processing her claim and making payment were the result of a deliberate course of action designed to deprive her of benefits owed under the contract. That the instances of delay were caused by several players allegedly under the control of AIG-related entities raises a plausible claim of conspiracy.[4] Moreover, as noted above, the scope of discovery and correlative burden on Defendants on this claim is not likely to be significantly increased as a result of this claim. *See Limestone Dev. Corp.*, 520 F.3d at 802-03.

B.  Motions to Strike

    1.  Legal Standard

Defendants have filed not only motions to dismiss pursuant to Rule 12(b)(6) but also motions to strike pursuant to Rule 12(f). More specifically, Defendants move the Court to strike from Ms. Jones's complaint her request for punitive damages. Defendants argue that the request for punitive damages should be stricken because, as a matter of law, she is not entitled to such a remedy.

---

[4] The Court notes that "[a]gents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage." *Wise v. Southern Pacific*, 223 Cal. App. 3d 50, 72 (Cal. Ct. App. 1963) (internal citations omitted). Ms. Jones is cautioned to consider this and the above discussion regarding alternative pleadings in considering any further amendments to the complaint.

14

Under Rule 12(f), a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (internal quotation marks omitted), *overruled on other grounds*, *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994). As indicated by the language of the rule, "'[t]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial. . . .'" *Id.* When ruling on a motion to strike, a court views the pleading under attack in the light most favorable to the nonmoving party. *See RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 561 (C.D. Cal. 2005). Courts generally disfavor motions to strike because striking is such a drastic remedy. *See Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000) (stating that "striking a party's pleadings is an extreme measure, and, as a result, we have previously held that 'motions to strike under Fed. R. Civ. P. 12(f) are viewed with disfavor and are infrequently granted'").

In evaluating Defendants' argument, the Court looks first to California Civil Code § 3294, which defines when punitive damages are available for a violation of state law. The statute states in relevant part:

> (a) In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.
> (b) An employer shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation.

Cal. Civ. Code § 3294.

15

1  In the instant case, Ms. Jones contends that punitive damages are warranted because
2  Defendants had a policy of delaying the handling, processing, and payment of insurance benefits
3  owed to insureds. *See, e.g.*, Compl. ¶¶ 39, 47, 49. As Ms. Jones points out, California courts have
4  indicated that insurers that have "established policies or practices in claims handling which are
5  harmful to insureds" may be held liable for punitive damages. *Mock v. Michigan Millers Mutual*
6  *Ins. Co.*, 4 Cal. App. 4th 306, 329 (1992) (emphasis omitted). For example, in *Neal v. Farmers*
7  *Insurance Exchange*, 21 Cal. 3d 910 (1978), the California Supreme Court held that an award of
8  punitive damages was justified based on evidence that the defendant insurer was pursuing a
9  conscious policy to take advantage of the plaintiff insured's unfortunate financial circumstances as a
10 lever to force a settlement more favorable to the defendant than the facts otherwise would have
11 warranted. *See id.* at 923. That there was such a policy was indicated by the defendant insurer's
12 "Claims Representative Field Manual," which advised its employees to "sense opportune times for
13 settlement," asserting that "[s]uch things as a marriage or death in the family, the purchase of a
14 home or automobile will present the ordinary claimant with a financial situation which will suggest
15 to him the advisability of getting his money out of his claim" and that "[i]f the injury is such that the
16 settlement may be tactfully approached, the claims representative should follow through with
17 appropriate discussion." *Id.*

18  As noted above, Ms. Jones alleges that Defendants purposefully delayed processing and
19 payment of her UIM claim, and the Court has found that for pleading purposes she has adequately
20 alleged these actions were purposefully taken pursuant to policy and/or a concerted course of action.
21 The Court also found that Defendants are alleged to have taken advantage of her vulnerable position.
22 This conduct, as alleged, is sufficient to state a claim for punitive damages under § 3294(a). The
23 allegation of purposefulness is also sufficient under § 3294(b) to establish that Defendants
24 authorized or ratified, *e.g.*, the wrongful conduct of Ms. Paules. *See* Cal. Civ. Code § 3294(b)
25 (providing that an employer is liable for punitive damages based an employee's acts if the employer
26 either (1) had advance knowledge of the employee's unfitness and employed her with a conscious
27 disregard of the rights or safety of others; or (2) authorized or ratified the employee's wrongful
28 conduct; or (3) was personally guilty of oppression, fraud, or malice).

1  Again discovery related to the claim for punitive damages will not add substantially greater
2  burden than that related to the underlying claims.  The motion to strike is therefore denied.

### III.  CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are granted in part and denied in part.  More specifically:

(1)  AIG, Inc. and AIG Risk Management's motions to dismiss the claims for breach of contract and breach of the implied covenant of good faith and fair dealing are granted with leave to amend;

(2)  National Union's motion to dismiss the claims for breach of contract and breach of the implied covenant is denied;

(3)  Defendants' motions to dismiss the fraud and interference-with-contract claims are granted with leave to amend except that the claim for interference against National Union is dismissed with prejudice;

(4)  Defendants' motions to dismiss the claims for IIED and conspiracy are denied; and

(5)  Defendants' motions to strike are denied.

As to claims on which Ms. Jones has leave to amend, any such amendment must be filed within thirty (30) days of the date of this order, except that the contract-based claims against entities other than National Union may be filed only if discovery provides a basis for further allegations.

This order disposes of Docket Nos. 5, 6, 15, and 16.

IT IS SO ORDERED.

Dated:  July 20, 2010

_____
EDWARD M. CHEN
United States Magistrate Judge